# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Jeffrey Williams and Kimberly Williams, <br><br>　　　　Plaintiffs, <br>　v. <br><br>Ameris Bank ISAOA and Selective Insurance Company of the SE, <br><br>　　　　　Defendants. | Case No. 2:24-cv-04068-RMG <br><br><br>**ORDER AND OPINION** |

Before the Court is Defendant Selective Insurance Company of the SE's ("Selective") motion to dismiss Plaintiffs' claims seeking a declaratory judgment against it. (Dkt. No. 7). Plaintiffs responded (Dkt. No. 13), and Defendant replied (Dkt. No. 17). For the reasons set forth below, the Court grants Defendant's motion.

## I.　Introduction

Plaintiffs are owners of real property in Pawleys Island, South Carolina, which is insured by a Standard Flood Insurance Policy ("SFIP") issued by Defendant Selective Insurance Company of the SE ("Selective"). (Dkt. No. 1-1, Exhibit B). As a Write-Your-Own ("WYO") Program carrier, Selective participates in the FEMA-administered National Flood Insurance Program ("NFIP") by collecting SFIP premiums and depositing the amount outstanding after fees and costs to the United States Treasury National Flood Insurance Fund. 42 U.S.C. § 4017(b)(2). While private insurance carriers handle the administration of claims pursuant to the WYO Program, FEMA is responsible for the payment of claims. *Id.* at § 4014.

Plaintiffs' monthly mortgage payments to Defendant Ameris Bank ISAOA ("Ameris") included their flood insurance premium, which Ameris would transmit to Defendant Selective. (Dkt. No. 1-1, ¶ 9). However, despite receiving notice of the policy's impending expiration on

three separate occasions —January 31, 2023 (indicating an expiration date of February 14, 2023), February 14, 2023 (providing a 29-day grace period for payment of the outstanding premium), and again on February 24, 2023 (flagging that the policy would lapse on March 15, 2023)—neither Plaintiffs nor Ameris responded to Selective's notice nor made payment to satisfy the $845 premium. (Dkt. No. 7-1 at 3).

Just five days after the policy lapsed on March 15, 2023, Selective received a check from Ameris reflecting the outstanding $845 premium payment. (Dkt. No. 1-1, ¶ 20 & Exhibit D). Selective notified Plaintiffs and Ameris that the premium payment would be credited as partial payment towards renewal of coverage on the lapsed policy, but a new, increased premium rate (set by FEMA) would be applied to the "new" policy. (*Id.*, ¶ 26 & Exhibit E). In addition to various causes of action levied by Plaintiffs against Defendant Ameris for its failure to timely pay the insurance premium, Plaintiffs seek a declaration from this court as to:

> (a) [t]he legal effect of Selective's acceptance and deposit of the premiums in April of 2024 without qualification;
>
> (b) and/or [t]he nature of the current Selective policy as a 'renewal' policy or a newly written policy; and/or
>
> (c) [t]he nature of Plaintiffs payment obligations, more specifically as to whether the renewal term payment should apply, or whether Plaintiffs are required to pay a new fee policy for the future.

(Dkt. No. 1-1, ¶ 32). The motions are fully briefed and ripe for this Court's review.

## II.  Legal Standard

Fed. R. Civ. P. 12(b)(6) permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." Such a motion tests the legal sufficiency of the complaint and "does not resolve contests surrounding the facts, the merits of the claim, or the applicability

2

of defenses . . . . Our inquiry then is limited to whether the allegations constitute 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir.1992) (quotation marks and citation omitted). In a Rule 12(b)(6) motion, the Court is obligated to "assume the truth of all facts alleged in the complaint and the existence of any fact that can proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 1980). However, while the Court must accept the facts in a light most favorable to the non-moving party, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

To survive a motion to dismiss, the complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the requirement of plausibility does not impose a probability requirement at this stage, the complaint must show more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint has "facial plausibility" where the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III.    Discussion

Defendant Selective argues that Plaintiffs' state law claims—that Defendant is estopped from contesting renewal of the policy where it accepted the late premium payment and/or waived its right to contest the policy renewal by accepting the late payment—are preempted by federal law in light of the SFIP's preemption clause and Fourth Circuit precedent. (Dkt. No. 7-1 at 7-8). Plaintiffs contend the Fourth Circuit case on which Defendant relies is distinguishable because the case concerned claims handling, and instead likens the claim at issue to cases involving state law

tort claims brought against WYO carriers arising from the procurement of policies. (Dkt. No. 13 at 4-7).

In light of controlling Fourth Circuit precedent, this Court finds that Plaintiffs' claims against Selective are preempted. In *Woodson v. Allstate*, the policyholders purchased a SFIP through Allstate, which later denied the vast majority of the policyholders' claims after Hurricane Irene damaged their waterfront property. 855 F.3d 632 (4th Cir. 2017)). The policyholders argued that WYO carriers operate with autonomy under the NFIP to handle SFIP claims, and thus should be held liable under state law for the bad faith handling of such claims. *Id.* at 638. After the district court found that Allstate had breached their insurance contract with Plaintiffs and violated the North Carolina Unfair and Deceptive Trade Practices Act, the Fourth Circuit reversed, holding that "federal law exclusively governs claims made on policies issued under the National Flood Insurance Program and to disputes arising out of the handling of those claims, thus preempting state law." *Id.* at 631-33.

Plaintiffs disagree that *Woodson* applies to the facts at issue and instead rely on the Fifth Circuit's opinion in *Campo v. Allstate Insurance Company*, 562 F. 3d 751 (5th Cir. 2009). In the Fifth Circuit's view, "federal law does not preempt state-law procurement-based claims" because such suits do not involve the same federal concerns as suits involving claims handling, which concern federal funds. *Id.* at 758. The Tenth Circuit registered its express disagreement with the Fifth Circuit in *Remund v. State Farm Fire and Casualty Company*, 483 Fed. App'x. 403 (10th Cir. 2012).[1] The court cited a FEMA bulletin that rejected the Fifth Circuit's interpretation of the

---

[1] The Court is troubled by Plaintiffs' representation that *Campo* was "binding on this Court in the absence of intra-district conflict," but failed to disclose the Tenth Circuit's opinion in *Remund* that expressly disagrees with *Campo*. (Dkt. No. 13 at 6).

4

SFIP's preemptive scope, where the Agency reiterated its view that "[t]o the extent there are conflicts between Federal and state law, FEMA recognizes that application of state laws would interfere with the implementation of the National Flood Insurance Program and would frustrate the national purpose and scope of the program." *Id.* at 408 n.3 (quoting Edward L. Connor, Acting Fed. Ins. Adm'r, Nat'l Flood Ins. Program, WYO Program Bulletin No. W–09038, Notice of FEMA's Intent to Adopt, by Regulation, a Clarification of the Current Express Preemption Clause of the Standard Flood Insurance Policy (July 16, 2009) . . . available at http://www.nfipiservice.com/stakeholder/pdf/bulletin/w–09038.pdf). Like the Tenth Circuit, this Court finds FEMA's own explanation of its regulations compelling, especially its post-*Campo* statement that it "understood and intended its regulations to preempt state law claims related to policy formation, renewal and administration"—nowhere cabining its preemptive effect to claims handling cases. *See id.* While this interpretation is not entitled to special deference in the post-*Chevron* era, this Court finds FEMA's explanation both reasonable and persuasive.

This explanation is bolstered by the plain language of the SFIP's preemption clause and FEMA's promulgating regulation, which read:

> This policy and all disputes arising from the handling of any claim under the **policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968 ... and Federal common law**. (44 C.F.R. Part 61, App. A(1) Art. IX. (emphasis added))
>
> **The standard flood insurance policy is authorized only under terms and conditions established by Federal statute, the program's regulations, the Administrator's interpretations and the express terms of the policy itself**. Accordingly, representations regarding the extent and scope of coverage which are not consistent with the National Flood Insurance Act of 1968, as amended, or the Program's regulations, are void, and the duly licensed property or casualty agent acts for the insured and does not act as agent for the

5

> Federal Government, the Federal Emergency Management Agency, or the servicing agent.  (44 C.F.R. § 61.5(e) (emphasis added))

"[F]ederal law preempts state law not only with respect to policy interpretation and claims handling under the NFIP, but also with respect to policy issuance and administration, including the rating, renewal, transfer, non-renewal, cancellation, or reformation of any SFIP contract issued by a WYO Company on behalf of the NFIP." *Davis v. Nationwide Mut. Fire Ins. Co.*, 783 F. Supp. 2d 825, 833 (E.D. Va. 2011).  "In interpreting the terms of an SFIP, courts employ federal common law, which 'draw[s] upon standard principles of insurance law.'" *Hampton v. First Protective Ins.*, 461 F. Supp. 3d 265, 271 (D.S.C. 2020) (*quoting Studio Frames Ltd. v. Standard Fire Ins. Co.*, 483 F.3d 239, 244 (4th Cir. 2007)). "Two such cornerstones of insurance law are that (1) a court is to interpret unambiguous policy language according to its plain meaning, and (2) where disputed policy language is ambiguous or susceptible to different constructions, a court is to adopt the construction most favorable to the insured." *Id*

At its core, this case involves Selective's administration of Plaintiffs' policy, specifically its "renewal" and "reformation." *Davis*, 783 F. Supp. 2d at 833. The express terms of the policy dictate that the "policy will expire at 12:01 a.m. on the last day of the policy term" and provides that "[i]f we do not receive the premium requested in the second bill by the revised due date, then we will not renew the policy" and "[i]n that case, the policy will remain as an expired policy as of the expiration date shown on the Declarations page." (Dkt. No. 7-3 at 19).  It is undisputed that neither Plaintiffs nor Defendant Ameris paid the renewal premium by the expiration date. Per the policy terms, the failure to timely make a premium payment in response to the final notice regarding the policy's expiration resulted in its lapse. (Dkt. No. 7-3 at 19).  The policy also addresses the effect of an insufficient premium payment, including the carrier's ability to cancel

or reform the policy or to reduce the amount of coverage available under it in line with the reduced premium payment. (*Id.* at 17-19). In light of the plain language of the SFIP and FEMA regulations, the Court finds that Plaintiffs' state law claims regarding the policy are preempted by federal law.

### IV. Conclusion

In light of the foregoing, the Court **GRANTS** Defendant Selective's motion to dismiss Plaintiffs' claims for declaratory relief. (Dkt. No. 7).

**AND IT IS SO ORDERED.**

                                                    s/ Richard M. Gergel
Richard Mark Gergel
United States District Judge

September 24, 2024
Charleston, South Carolina